**Dorene L. LINDSAY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 97–179 C.

United States Court of Federal Claims.

June 25, 1998.*

Dorene L. Lindsay, Great Mills, MD, pro se.

William B. Neel, United States Postal Service, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Plaintiff Doreen Lindsay seeks additional compensation from her mail transportation and delivery contract. The solicitation for the contract misstated the total number of mailboxes to which mail delivery was required, resulting in her allegedly not being paid adequately for work performed. Plaintiff claims that the contract provides an upward adjustment in compensation in this situation. We disagree, and therefore must dismiss this case.

---

* This opinion and order was filed on April 17, 1998. It is being reissued for publication at the request of the defendant pursuant to RCFC 52.1(b).

## BACKGROUND

Plaintiff was awarded a mail transportation and delivery contract in December 1995. The term of the contract was December 9, 1995 through June 30, 1997. The mail route was in Great Mills, Maryland. Prior to award of the contract, plaintiff had delivered a larger route under an emergency contract that included the awarded route. The term of the emergency contract was October 1994 to December 1995. The solicitation for the new contract provided estimates relating to mileage, hours, and number of mailboxes to be serviced on the route, but cautioned:

> The estimated annual miles per trip are given only as information. Prior to submitting a bid, the bidder should determine the actual miles.

> The estimated annual hours are approximately the number of hours needed to operate the trips as they are shown in the schedule. Also included in the total estimated annual hours are the number of hours needed for casing, loading/unloading and mail mark-up. Prior to submitting a bid/proposal, the bidder/offeror must determine the actual hours.

> The hours are based on 459 total boxes. . . . [1]

The solicitation estimated 1,768 hours and 4,333.9 miles per year. Plaintiff verified the hours and the mileage. The Government accepted plaintiff's bid for $25,000 and she began servicing the route.

The Postal Service conducted a new mailbox count in December 1995. It revealed a total of 503 mailboxes on the route, 44 boxes above the number listed in the solicitation. Plaintiff notified the contracting officer of the discrepancy in the count, and requested an increase in compensation based on the actual box count.

In April 1996, defendant adjusted the payment under the contract pursuant to clause 12(a)(1) of the "Basic Surface Transportation Services Contract—General Provisions" attached as part of the Statement of Service. Section 12(a), entitled "Service Changes," provides as follows:

> INSIGNIFICANT MINOR SERVICE CHANGES. The Contracting Officer may, at any time, without consulting the contractor, issue orders directing an extension, curtailment, change in line of travel, revision of route, or increase or decrease in frequency of service or number of trips and fixing an adjustment in the Contractor's compensation which increases or decreases the contractor's rate of pay by no more than $1000. If the Contractor believes the increased or decreased cost of providing the service required by the order exceeds the increase made in compensation, he may request an adjustment of compensation for the service change.[2]

The adjustment included a lump sum payment of $222.11 for past performance and an additional $755.93 to be paid over the term of the contract. The dollar amounts were based on an increase of .7 miles necessary to perform the route following an increase of 10 mailboxes assigned to the route and an additional 50 hours per year to service the route. The Government did not provide additional compensation for the 44 boxes missing from the original solicitation. While the change in service from the original contract route was an extension of the route by .7 miles and an addition of 10 mailboxes, the service order indicated a 54–box increase to reflect the actual count. An additional adjustment in May of $182.84 compensated plaintiff for 15 more hours necessary to perform the route.

Plaintiff received a final decision in August 1996 denying her claim for additional com-

---

1. Immediately above this language in the solicitation appears:

   *1. Estimated annual schedule miles: 4,333.9
   *2. Estimated annual schedule hours: 1,768
       Total boxes: 459

   Plaintiff appears to believe that the above reference to "total boxes" reflects that the Government was promising the 459 figure to be correct, and that an upward deviation from that number must be accompanied by additional compensa-

tion. Defendant claims that the number of boxes is simply a number used in estimating hours.

2. Plaintiff's claim basically alleges a change in service occurring before contract award. Generally, service changes should be claimed for changes occurring after contract performance begins. *See generally In re Kressin*, PSBCA No. 1588, 87–3 B.C.A. ¶ 20,080, 1987 WL 41215 (1987); *In re St. Clair*, PSBCA No. 3472, B.C.A. (CCH) ¶ 27,523, 1995 WL 84476 (1995).

pensation. The contracting officer's final decision included the following:

> When you were awarded your contract on December 9, 1995, there were 509 actual boxes being served on your contract route. When we solicited for service on this contract, we inadvertently listed 459 as the number of boxes being served. Recently, we were informed of our error and as a result, we corrected the box count to reflect 509. In addition, a box extension effective April 20, 1996 was also added to your [Highway Contract Route], which increased the box count to its present total of 513 boxes. You have been properly compensated for this extension.

> I would like to point out that you were the contractor of record for HCR 206CU, the emergency contract that became the present HCR 20653. At the time of contract solicitation, there were 509 boxes on your emergency HCR. As the contractor of record, you knew or should have known, what the exact box total was and that total should have been the basis for the formulation of your contract bid. With the exception of the April 20, 1996 extension, there has been no changes in the box total.

> Due to the fact that there was no actual increase in the total number of boxes on HCR 20653 from contract solicitation until now (with the exception of the 4 box extension), and because you are successfully operating your contract within the allotted time and mileage, your request for increased compensation is denied.

Plaintiff brought this action within twelve months of the contracting officer's final decision.

## DISCUSSION

### 1. Adjustments in Annual Hours

■ Plaintiff contends that the inaccurate box count entitles her to compensation based on a formula contained in the "Adjustments in the Annual Hours" provision of the contract. The clause states:

ADJUSTMENTS IN ANNUAL HOURS: If the contracting officer and the contractor are unable to mutually agree on an adjustment in the annual hours for a service change the following formula will apply. Adjustments in the annual hours for casing and route operation will be computed using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.40. The sum of the two equals the new hours added to the contract.

Plaintiff acknowledges that she "did actually verify the hours and mileage to be correct" before contract award. She was servicing a route that included the awarded route well before she submitted her bid. She had ample opportunity to verify the route information, and she must have taken mileage and hours into account in fashioning her bid. Plaintiff cannot invoke the "Adjustments in Annual Hours" provision of the contract because no adjustments in annual hours are uncompensated. Changes in the route made after award and the initiation of performance were compensated.[3] Plaintiff admits as much. The fact that the Government made an erroneous box count does not mandate an adjustment in hours, because plaintiff concedes that the hour estimate was correct.

Plaintiff relies on the fact that the number of boxes was not described as an "estimate" in the solicitation, as mileage and hours were. Plaintiff's preferred construction of the solicitation must be that the box total was the one figure provided by the Government upon which she could rely. This is not a reasonable interpretation. Box count was just one component of the estimate. Mileage was another. Plaintiff challenges a component used to arrive at an estimate, but the contract states that it is plaintiff's duty to verify the estimates. To base a claim on the accuracy of a figure used to arrive at a verified estimate is inappropriate. If box count made it impossible to complete the route in the estimated time, plaintiff knew or should have known. The Government cautioned against

---

3. Under the formula, the .7 additional miles and the 10 additional mailboxes would have produced an amount of only $523.43. [ (10 × 3.64) (boxes) + (.7 × 10.40) (miles) = 43.68 (Total) × 12.18926 (wage rate) = $532.43]. The additional amounts payed by the Government are not explained by the Government or challenged by plaintiff.

strict reliance on the estimated schedule hours (and miles). It cannot be held liable for plaintiff's alleged reliance upon one component of those estimates.

### 2. Changed Circumstances

■ The solicitation cautions that:

While the law provides for adjustment of the compensation of contractors holding advertised contracts, BIDDERS SHOULD NOT SUBMIT BIDS WITH THE EXPECTATION OF HAVING THEIR PAY ADJUSTED IF AWARDED A CONTRACT, AS NO INCREASE WILL BE ALLOWED EXCEPT FOR CHANGED CIRCUMSTANCES.[4]

Plaintiff has not alleged uncompensated changed conditions as to hours or mileage upon which she based her bid. Plaintiff admits:

I have been adequately compensated for the extra mileage on the route. Mr. Sykes [the Contracting Officer] and I agree on that issue. However, regardless of which formula the contracting officer chooses to use my hourly compensation works out to be more than an "insignificant minor service change." As the contract states, the annual hours are *estimated* not exact. Though I finish my contract duties on some days before my contract time there are many days that I go over my contract time.

Plaintiff concedes adequate compensation for the mileage portion of her contract. The component she contends is incorrect is the hours necessary to service the route, a variable that plaintiff admits should not have been relied upon because it was an estimate. Plaintiff verified the hours and mileage when the actual box count was not 459 but 509. The box count was only a tool to estimate the hours needed to complete the route.

Plaintiff has been compensated for the changes in her assigned route that occurred after contract award. The hours necessary to perform the contract were accurate as estimated by the solicitation. No uncompensated changes are in the contract.

### 3. Mutual Mistake of Fact

Plaintiff does not claim mutual mistake of fact. Some of her allegations might be addressed under a mutual mistake of fact analysis, however. Plaintiff and defendant agree that the Government's mailbox count for the assigned route was incorrect.

■ To establish mutual mistake of fact, a contractor must prove: (1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of mistake on the party seeking reformation. *See, e.g., Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed.Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990).

■ If plaintiff could establish the first element above, the remaining three factors do not apply. Plaintiff verified the hours and mileage estimated to be required under the contract. She had experience with the same route and same mailboxes before preparing her bid. A mistake could not have been a basic assumption underlying the contract, and a mistake could not have had a material effect on the bargain. Plaintiff bid on the route based on her experience with it and the hours that she believed it would require. She was largely correct in her belief, and cannot claim now that either party's mistake about the boxes affected their bargain materially. Moreover, the solicitation placed the burden upon contractors to verify estimates given.[5] The contract put the risk of mistake on plaintiff.

---

4. If the "Adjustments in Annual Hours" formula from the contract were used to establish the bid price, the appropriate amount of the bid would be in excess of $571,700.00. [503 (boxes) × 3.64 = 1,830.92 hours; 4,333.9 (miles) × 10.40 = 45,072.56 hours. 1,830.92 + 45,072.56 = 46,-903.48 (total hours); 46,903.48 (hours) × $12.18926 (wage rate) = $571,718.71]. Therefore, it is clear that the formula plaintiff seeks to employ was not for use prior to contracting, but only where changed circumstances occur during the contract term.

5. In addition to the cautionary language relating to the estimated mileage and hours, the following language appears in the solicitation:

Bidders/offerors submitting bids or proposals should familiarize themselves with the service to be performed, the estimated weight and volume

## CONCLUSION

Compensation for Highway Contract Route contracts is based on the hours and mileage necessary to perform a route. It is the bidder's responsibility to verify the hours and mileage necessary to perform the route. Where a successful bidder verifies the hours and mileage, recovery for an inaccurate mailbox count is not warranted. Mailbox count is only one tool to assist in approximating the hours necessary to perform. Plaintiff serviced the route on an emergency basis. She was in a unique position to verify the accuracy of information included in the bid prior to submission. Her bid could have been based on variances that she detected. Plaintiff admits that she is able to perform the route in the time estimated and she admits that she has been compensated adequately for mileage. The contract does not provide for additional compensation in this situation. Plaintiff cannot recover on a mutual mistake of fact theory for the reasons stated.

Defendant's motion to dismiss or for summary judgment is GRANTED. The clerk will dismiss plaintiff's complaint and enter judgment for defendant. No costs

---

of mail to be carried and all other circumstances affecting the cost of operation, without regard to prevailing rates, so as to avoid misapprehension or cause for complaint thereafter.
PS FORM 7469 II(D)(10) (incorporated as part of the "Highway or Domestic Water Transporta-

tion Contract Information and Instructions" portion of the solicitation).

